UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDY GARRETT,<br><br>    Plaintiff,<br><br>    v.<br><br>EMIRATES WHICH WILL DO BUSINESS IN CALIFORNIA AS EMIRATES AIRLINE,<br><br>    Defendant. | No. 2:14-cv-02717-TLN-CMK<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court pursuant to Defendant Emirates Which Will Do Business in California as Emirates Airline's ("Defendant") Motion for Summary Judgment. (ECF No. 18.) Plaintiff Judy Garrett ("Plaintiff") opposes Defendant's motion. (ECF No. 22.) Defendant filed a reply, (ECF No. 23), a response to Plaintiff's statement of undisputed facts, (ECF No. 24), and evidentiary objections, (ECF No. 25). The Court has carefully considered the arguments raised by the parties. For the reasons set forth below, Defendant's Motion for Summary Judgment, (ECF No. 18), is hereby DENIED.

///
///
///
///

## I. FACTUAL BACKGROUND

The parties agree that on September 29, 2012, Plaintiff was a passenger on a flight which arrived at the Dubai International Airport from the Seychelles. (Pl's Reply to Def's Statement of Undisputed Facts ("DSUF"), ECF No. 22-1 ¶ 1.) The parties agree Plaintiff was travelling from and to Los Angeles with intermediate stopping places in the Seychelles and Dubai. (ECF No. 22-1 ¶ 2.) They agree that after Plaintiff's flight landed in Dubai, the passengers disembarked using a portable metal stairway ("Stairway"). (ECF No. 22-1 ¶ 3.) They agree Plaintiff took her time while descending the Stairway, and her view was not obstructed because there were no passengers located in front of her. (ECF No. 22-1 ¶ 4.) The parties agree the Stairway was in good working condition and it was not damaged or defective. (ECF No. 22-1 ¶ 7.) The parties agree that while using the Stairway, Plaintiff fell to the ground below. (ECF No. 22-1 ¶ 5.)

Plaintiff alleges multiple issues related to the Stairway caused or contributed to her fall and the injuries she received, including: (1) Defendant's decision to use the Stairway instead of a jetway; (2) that the Stairway contained a landing partway down that was approximately twice the size of the stairs and the landing did not contain any warnings to differentiate it from the other stairs; (3) Defendant's failure to warn passengers they would be deplaning via a non-uniform stairway that contained a landing; (4) that the Stairway was very steep, lacked traction strips, and was not adequately illuminated; (5) the flight arrived at 4:30 a.m. and it was dark out; and (6) Plaintiff fell immediately upon encountering the landing and that was when she first realized that the spot contained a landing or protuberance rather than standard metal stair. (ECF No. 22 at 6–7; ECF No. 22-1 ¶ 6.)

Plaintiff sued in the Superior Court of California, Shasta County. (ECF No. 1 ¶ 1.) Defendant removed to this Court based on diversity and federal question. (ECF No. 1 ¶¶ 4–7.) Defendant moves for summary judgment arguing "Plaintiff's alleged injuries were not caused by an 'accident,'" as required by the applicable convention, and therefore Defendant is not liable as a matter of law. (ECF No. 18 at 2.)

///

///

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists, and therefore, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Id.* at 587.

**III.  ANALYSIS**

Defendant moves for summary judgment, arguing Plaintiff's fall was not an "accident" as required by the applicable convention, Article 17 of the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 ("Montreal Convention"). (ECF No. 18 at 1, 6.) Plaintiff argues the Court should apply a more expansive definition of the term "accident," and that under either definition triable issues of material fact exist as to whether Plaintiff's fall down the Stairway was an "accident." (ECF No. 22 at 5, 7, 18, 23.) Plaintiff attached two declarations to her opposition that allege additional facts in support of her argument. (ECF Nos. 22-3, 22-4.) Defendant contends one of the declarations, by Plaintiff, is a "sham affidavit" and asks the Court to strike it. (ECF No. 23 at 5; ECF No. 25 at 1.)

///

///

4

### A. Definition of "Accident"

The parties agree that Article 17 of the Montreal Convention governs this dispute. (ECF No. 18 at 1–2; ECF No. 22 at 5.) Article 17 applies to passenger injuries caused by accidents occurring on aircraft or when entering or exiting aircraft during commercial, international air travel. Montreal Convention art. 17(1). The United States Supreme Court has held that an "accident" under Article 17 of the Warsaw Convention, the predecessor to Article 17 of the Montreal Convention, is "an unusual or unexpected event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405 (1985). Courts routinely rely upon Warsaw Convention precedent when interpreting provisions in the Montreal Convention that are substantively the same. *Narayanan v. British Airways*, 747 F.3d 1125, 1127 n.2 (9th Cir. 2014). The Ninth Circuit continues to use the *Saks* definition of "accident" in Montreal Convention cases. *See Phifer v. Icelandair*, 652 F.3d 1222, 1223–24 (9th Cir. 2011).

Plaintiff argues the *Saks* definition of "accident" is not consistent with the Montreal Convention's focus on consumer protection, that it has been applied too narrowly considering a new clause in the article, and that the definition was developed considering the word's legal meaning in French. (ECF No. 22 at 6, 23.) Binding Ninth Circuit precedent continues to apply the *Saks* definition of accident to the analysis of Montreal Convention cases. *Phifer*, 652 F.3d at 1223–24. Accordingly, the Court will apply the *Saks* definition of accident in this matter.

### B. Declarations of Plaintiff and Craig Randall Berke

Plaintiff attached two declarations to her opposition in support of her argument that an accident caused her fall and injuries. Plaintiff provided one of the declarations and Craig Randall Berke ("Berke"), who was traveling with Plaintiff, provided the other. (ECF Nos. 22-3, 22-4.) Defendant objects to both declarations as not proper and also raises objections to statements contained in each declaration. (ECF No. 25 at 4, 15, 18.)

Defendant objects that Plaintiff and Berke signed their declarations "under the penalty of perjury under the laws of the State of California," rather than "under penalty of perjury under the laws of the United States of America," as required by 28 U.S.C. § 1746. (ECF No 25 at 15, 18.) Section 1746, subsection (1) requires declarations executed outside the United States contain the

language Defendant specifies. 28 U.S.C. § 1746(1). Subsection (2) applies to declarations executed within the United States and only requires a declaration be made "under penalty of perjury that the foregoing is true and correct." 28 U.S.C. § 1746(2). Plaintiff signed her declaration in Redding, California. (ECF No. 22-3 at 4.) Berke signed his declaration in Hemet, California. (ECF No. 22-4 at 3.) Both declarations were signed within the United States thus the language in each is proper under 28 U.S.C. § 1746(2) and the court will not strike them in their entirety.

Defendant raises several objections to statements in Plaintiff's and Berke's declarations. (ECF No. 25 at 3–18.) Defendant objects to, as irrelevant, statements related to Plaintiff's and Berke's post-injury lodging and return flights. (ECF No. 25 at 14, 17.) The Court agrees these subjects are not relevant for the purposes of deciding this motion and will disregard them.

Defendant objects to, as irrelevant, statements by Plaintiff and Berke that each would have expected a major international airport such as Dubai to use a jetway rather than a stairway and Berke's statement that he was not informed passengers would use a stairway to deplane. (ECF No. 25 at 3–4, 15.) The Court agrees this is not relevant for the purposes of deciding this motion and the Court will disregard these statements. *Dizon v. Asiana Airlines, Inc.*, 240 F. Supp. 3d 1036, 1044 (C.D. Cal. 2017) (stating a court does not view evidence "from [a p]laintiff's perspective—it examines the circumstances objectively").

Defendant objects to, as irrelevant, Plaintiff's statement Defendant did not provide any instructions about use of the Stairway or warning that the Stairway contained a landing. (ECF No. 25 at 3, 9–10.) Plaintiff asserts she did not know about the landing, could not distinguish the landing from stairs in the dark at 4:30 a.m., and fell as a result. Whether or not Plaintiff was informed there was a landing is, therefore, relevant to Plaintiff's claim and the Court will not strike these statements.

Defendant objects to, as irrelevant, Berke's statements that he was not warned the Stairway contained a landing, it was 4:30 a.m. and dark, with the lighting limited to the cabin and the ground at the bottom of the Stairway, and the Stairway was steep with no traction strips. (ECF No. 25 at 16–17.) Plaintiff asserts she did not know about the landing and could not

distinguish it from the stairs in the dark, and the Stairway was steep and did not have traction strips, so Berke's observations related to these issues are relevant to Plaintiff's claim.

### C. Sham Affidavit Rule

Defendant argues Plaintiff's declaration is a sham and it contradicts her prior deposition testimony for the purpose of manufacturing triable issues. (ECF No. 25 at 1, 3.) Defendant asks the Court to strike Plaintiff's declaration or, alternatively, disregard the portions that contradict Plaintiff's prior deposition testimony. (ECF No. 25 at 3.)

Under the "sham affidavit" rule, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009)). The court may strike or discount statements in the affidavit that contradict the affiant's prior deposition testimony or may strike the affidavit entirely. *See Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 954 (9th Cir. 1999) (holding that portions of the plaintiff's affidavit should be disregarded, or at least discounted, because those portions directly contradicted her earlier deposition testimony). The sham affidavit rule "should be applied with caution" because it is in tension with the principle that a court shall not make credibility determinations when granting or denying summary judgment. *Van Asdale*, 577 F.3d at 998. The "inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Yeager*, 693 F.3d at 1080 (quoting *Van Asdale*, 577 F.3d at 998–99).

A court may strike statements in the affidavit which conflict with prior deposition testimony or provide information which the affiant testified he could not recall when deposed. *Yeager*, 693 F.3d at 1080. However, "newly-remembered facts, or new facts, accompanied by a reasonable explanation, should not ordinarily lead to the striking of a declaration as a sham." *Id*. at 1081. The affiant may also elaborate upon, explain or clarify prior deposition testimony and "minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." *Van Asdale*, 577 F.3d at 999 (quoting *Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir. 1995)).

Defendant objects to several statements in Plaintiff's declaration as contradictory to her prior deposition testimony. (ECF No. 25 at 4–14.) Defendant's Objection Nos. 3 and 6 relate to whether Plaintiff knew why she fell or what caused her to fall. (ECF No. 25 at 4–5, 8–9.) In Plaintiff's declaration, she states that she "began to fall immediately upon encountering the landing/platform." (Garrett Decl., ECF No. 22-3 ¶ 8.) When deposed, Plaintiff testified that she did not know exactly why she fell or what caused her to fall but she did recall coming to "a little landing" and then falling. (Garrett Dep. 18:15–16.) Plaintiff alleged in her complaint that she "tripped on an object on one of the steps or tripped on a protuberance of one of the steps." (ECF No. 1 at 11 ¶ 15.) Plaintiff's deposition testimony that she recalled coming to a landing and then falling is not in "clear and unambiguous" conflict with her later declaration that she began to fall immediately upon encountering the landing. *Yeager* at 639 F.3d at 1081 (stating the non-moving party is not precluded from elaborating upon prior deposition testimony).

In Defendant's Objection No. 4, Defendant objects to Plaintiff's statement in her declaration that the landing did not contain any markings, warnings, or precautionary devices to differentiate it from the rest of the stairs. Defendant argues this statement conflicts with Plaintiff's deposition statements that there was nothing "out of ordinary or the irregular about the stairs," "the stairs were in good working order," and she did not recall "anything being defective about the stairs." (ECF No. 25 at 5–7.) Plaintiff's declaration statement about the landing does not conflict with her prior deposition testimony about the stairs. The Court notes that Defendant does not identify deposition testimony by Plaintiff answering questions about markings or warnings on the landing.

In Defendant's Objection No. 9, Defendant objects to Plaintiff's statements that the Stairway was very steep. (ECF No. 25 at 11–12.) Defendant argues this statement conflicts with the same deposition statements discussed above, in which Plaintiff testified that there was nothing "out of ordinary or irregular about the stairs," "the stairs were in good working order," and she did not recall "anything being defective about the stairs." (ECF No. 25 at 12.) Plaintiff's declaration statements regarding the steepness of the Stairway did not clearly and unambiguously

8

conflict with her deposition testimony regarding the stairs, but rather are elaborations of her prior deposition testimony. *See Yeager*, 639 F.3d at 1081.

Defendant's Objection Nos. 5 and 8 relate to whether the Stairway was adequately illuminated at the time of the incident. (ECF No. 25 at 7–8, 10–11.) In Plaintiff's declaration, she states that "due to it being nighttime and the stairway being a dark steel color, [she] was unable to tell that the landing/platform was a different size than the other steps until after [she] started falling." (ECF No. 22-3 ¶ 9.) Plaintiff also declares that she remembers "that it was too dark to be able to differentiate between the normal steps on the stairway and the extended platform/landing, where [she] fell." (ECF No. 22-3 ¶ 12.) At deposition, Plaintiff stated it was dark outside at the time of the incident, that she could not recall whether the stairs were illuminated, and that she had no reason to believe the stairs were not illuminated. (Garrett Dep. 21:15–23.) Plaintiff also stated during deposition that she did not have any problems seeing the stairs while disembarking. (Garrett Dep. 21:24–22:1.)

Plaintiff's allegation she was unable to see the landing and see that it was a different size than the stairs does not clearly and unambiguously contradict Plaintiff's deposition testimony, in which she testified that she was able to see the stairs even though it was dark out, but was not asked whether she was able to see the landing. Further, these statements can be reconciled with Plaintiff's allegation in her complaint that she tripped on a "protuberance" extending from one of the stairs. *Yeager*, 639 F.3d at 1081 (stating "new facts, accompanied by a reasonable explanation, should not ordinarily lead to the striking of a declaration as a sham").

Defendant's Objection No. 10 relates to Plaintiff's prior use of portable metal stairs. (ECF No. 25 at 12–14.) In Plaintiff's declaration, she stated that she has used portable stairs to disembark a plane "approximately two times" before, "but neither of the stairways had a landing/platform area near the top of the stairs. Further, neither set of stairs were as steep as the stairway used in Dubai." (ECF No. 22-3 ¶ 16.) At deposition, Plaintiff stated she had used portable metal stairs in the past that were "similar in construction" to the Stairway. (Garrett Dep. 26:20–27:4.) During her deposition, Plaintiff did not state those past portable stairs lacked landings or were less steep than the Stairway. (Garrett Dep. 26:20–27:4.) Plaintiff, however, did

9

not state that those past portable stairs did have those features, or that the Stairway was identical to the part portable stairs. (Garrett Dep. 26:20–27:4.) Plaintiff's statements in her declaration distinguishing the Stairway's design from the design of the portable stairs she used in the past does not clearly and unambiguously contradict her deposition, but it is an elaboration. *Yeager*, 639 F.3d at 1081 (expressing that a non-moving party is not precluded from elaborating upon prior deposition testimony). The Court will not strike Plaintiff's declaration (ECF No 22-3).

### D. Occurrence of an "Accident"

An "accident" under Article 17 is "an unexpected or unusual event or happening that is external to the passenger." *Saks*, 470 U.S. at 405. This definition "should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." *Id*. Because "[a]ny injury is the product of a chain of causes," an injured passenger is only required to "be able to prove that some link in the chain was an unusual or unexpected event external to the passenger." *Id*. at 406. "Not every identifiable incident or occurrence during a flight is an 'accident' within the meaning of Article 17 even if the incident gives rise to injury." *Tseng v. El Al Israel Airlines, Ltd.*, 122 F.3d 99, 102 (2d Cir. 1997), *rev'd sub nom. El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155 (1999). "In cases where there is contradictory evidence, it is for the trier of fact to decide whether an 'accident'...caused the passenger's injury." *Saks*, 470 U.S. at 405.

Defendant argues that none of the alleged "unexpected and unusual events" Plaintiff identifies constitute an "accident" as a matter of law. Defendant notes it is undisputed that at the time of the incident the Stairway was in good working order, was not damaged or defective, and there was nothing out of the ordinary or irregular about the Stairway. (ECF No. 23 at 7) (citing Garrett Dep. 24:14–17). Plaintiff argues the totality of the circumstances that night, the multiple events, are links in a chain that together constitute an accident. (ECF No. 22 at 11.)

Courts have found "accidents" during deplaning in a variety of circumstances. *See Gezzi v. British Airways PLC*, 991 F.2d 603, 605 (9th Cir. 1993) (presence of water on steps on which the plaintiff slipped constituted an accident because it was unexpected and external to the plaintiff); *Girard v. Am. Airlines*, Inc., 2003 WL 21989978, * 10 (E.D.N.Y. Aug. 21, 2003) (genuine issue of material fact regarding whether the step was defective was for the jury to assess

10

and to decide whether an accident caused the plaintiff's injury); *McCarthy v. American Airlines, Inc.*, 2008 WL 2704515, *5 (S.D. Fla. 2008) (genuine issue whether the plaintiff's fall down the stairs after being touched by crew member was an accident); *Buckwalter v. U.S. Airways, Inc.*, 2014 WL 116264, * 4 (E.D. Penn 2014) (issues of fact about whether the deplaning process was disorderly, crew failed to give adequate warnings, and a passenger pushed the plaintiff onto the tarmac, so it was for a jury to decide whether an accident caused the plaintiff's injury);

However, "when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17…cannot apply." *Saks*, 470 U.S. at 406 (holding that the plaintiff's permanent hearing loss was not caused by an accident because it was the result of the "normal" and "usual" operation of the aircraft's pressurization system); *Ugaz v. Am. Airlines, Inc.*, 576 F. Supp. 2d 1354, 1365–66 (S.D. Fla. 2008) (finding a stationary escalator the plaintiff chose to use to disembark "is not reasonably considered an 'unusual or unexpected event' constituting an accident"); *Sethy v. Malev-Hungarian Airlines, Inc.*, 2000 WL 1234660, at *4 (S.D.N.Y. Aug. 31, 2000), *aff'd*, 13 F. App'x 18 (2d Cir. 2001) (holding the plaintiff had not shown it was unexpected or unusual for a piece of luggage to be in the aircraft's aisle because it was "customary" for luggage to be in various areas of the cabin); *Vanderwall v. United Airlines*, 80 F. Supp. 3d 1324, 1334 (holding it was not unusual or unexpected for a discarded blanket bag to be in the aisle).

In *Cuartas v. American Airlines, Inc.*, 2012 WL 845543 (S.D. Ind. 2012), the plaintiff was injured while using portable stairs to deplane. *Id*. at *1. The court found there was a genuine issue of material fact as to whether the incident was an "accident." *Id*. at 4. The plaintiff showed the stairs "were metal, wet from the rain, and lacked black traction strips, although they did have some pattern of raised metal on the steps" and the plaintiff did not remember any warnings that stairs were being used to deplane. *Id*. The defendant showed its standard practice was to provide warnings when stairs were used, and that use of portable stairs, and the fact that those stairs were wet, was not unexpected or unusual since it was raining at the time of the incident. *Id*. The court determined a reasonable jury could find for either party — either that the plaintiff's injuries were caused by an accident or that no accident occurred — and so denied summary judgment. *Id*.

11

Plaintiff identifies multiple events she argues, when considered in total, constitute an "accident." The events include use of the Stairway rather than a jetway; lack of warning that the Stairway had a landing either by an announcement by crew members, signs or markings on the Stairway, or illumination near the landing; illumination at the top and bottom of the Stairway so that passengers could see stairs at the top and bottom of the Stairway but could not see the landing; the steepness of the Stairway, and lack of traction strips or treads. (ECF No. 22 at 17.) Plaintiff supports her claim with declarations from both her and Berke the flight landed at 4:30 a.m., how dark it was out when they deplaned, the lack of warning about the landing from crew members or signs, the illumination around the top and bottom stairs, and lack of illumination near the landing. (ECF No. 22-3 ¶¶ 8–14; ECF No. 22-4 ¶¶ 5–7.)

Additionally, Plaintiff points to photographs from the time of Plaintiff's fall showing the Stairway, the dark metal stairs, the lack of traction strips, the illumination at the top and bottom of the Stairway but not near the landing, and the dark of the night around the time of the incident. (ECF No. 22 at 11 n.1.) Finally, in her declaration, Plaintiff states she does not remember seeing the landing until she started to fall, immediately began to fall once she reached the landing, and states she did not fall from losing her balance or becoming dizzy. (ECF No. 22 at 9–10.)

Defendant argues Plaintiff does not know the precise mechanism of her fall and so the Court can only speculate about the cause of Plaintiff's fall and whether it was an accident. (ECF No. 23 at 14.) Plaintiff argues reasonable inferences can be drawn from the circumstances that Plaintiff's fall was an "accident." (ECF No. 22 at 17.)

> The line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncrasies. The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts. As the Supreme Court has stated [in *Galloway v. United States*, 319 U.S. 372, 395 (1943)]: "The essential requirement is that mere speculation be not allowed to do duty for probative facts after making due allowance for all reasonably possible inferences favoring the party whose case is attacked."

*Poppell v. City of San Diego*, 149 F.3d 951, 954 (9th Cir. 1998) (citing Ruggero J. Aldisert, *Logic*

*for Lawyers: A Guide to Clear Legal Thinking* 26–27 (3d ed.1997)). Defendant cites *Sakaria v. Trans World Airlines*, 8 F.3d 164 (4th Cir. 1993), in which an aircraft passenger died of a heart attack a day and a half after his flight, and the court determined the required expert medical opinion testimony on causation was insufficient after the doctor revised his opinion to exclude hearsay from the family friend to whom the passenger had recounted his experience. *Id*. at 167–68, 173. The *Sakaria* court explicitly stated it would not decide whether the circumstances of the stopover constituted an accident, because the plaintiff did not provide sufficient evidence that the injuries — heart attack and death — were caused by the stopover. *Id*. at 172. *Sakaria* has little application to the issues raised in this motion — the circumstances of Plaintiff's fall and whether that constitutes an accident — rather than whether Plaintiff was injured due to the fall.

In *Dickson v. Rem Con Const.*, 2004 WL 119509, at *6 (Cal. Ct. App. Jan. 27, 2004), the court determined the plaintiff showed a triable issue of material fact regarding causation by testifying he tripped over "something" and identifying the area where he tripped, providing photographs of the area showing uneven ground and a meter box just above the ground, and a nearby witness who saw the area at the time and concluded the only thing the plaintiff could have tripped on was the meter box. *Id*. at *6. The *Dickson* court decided that, viewing the evidence in the light most favorable to the non-moving party, it was sufficient to show it was more reasonable and probable the plaintiff had tripped over the meter box. *Id*. at *6.

Considering the totality of the circumstances — the use of the Stairway in the manner it was employed and the conditions of the evening, including lack of warning about the landing, the illumination, Plaintiff's testimony she only fell when she came to the landing and her foot hit an unexpected protuberance on what she expected to be a stair, and that she did not fall due to losing her balance or dizziness — Plaintiff has shown a reasonable jury could find Plaintiff's injury was caused by an "accident." *Cuartas*, 2012 WL 845543 at *1; *Olympic Airways v. Husain*, 540 U.S. 644, 657 (2004) (flight crew's inaction in medical emergency was unusual, unexpected, and external, and was an accident). The lack of notice or warning regarding the landing in the middle of the Stairway in the dark at 4:30 a.m. bears greater resemblance to the unexpected presence of water on a stair than to an obviously inoperable escalator.

Defendant argues use of the Stairway was not unexpected or unusual, and any injuries Plaintiff suffered were the result of the Stairway's normal operation. (ECF No. 18 at 11; ECF No. 23 at 10.) Defendant points to deposition testimony from Plaintiff, including Plaintiff's statement she had used similar portable stairs twice, a declaration from one of Defendant's employees who assisted after Plaintiff's fall, and photographs of the Stairway and stairs taken at the time, to show the evening was clear, the Stairway's construction, and that it was clean, dry, and free from substances. (ECF No. 23 at 7; *see* DSUF, ECF No. 22-1 ¶ 7; ECF No. 18-4 ¶ 4.) To counter Plaintiff's argument that the Stairway was steep, not properly marked with warnings about the landing, that the landing was irregular compared to the stairs, and the stairs lacked traction strips, Defendant identifies portions of Plaintiff's deposition testimony in which she testifies the Stairway was in good working order, and was not damaged, defective, out of the ordinary, or irregular. (ECF No. 23 at 7, 10) (citing Garrett Dep. 24:14–23).

Defendant also presented sufficient evidence for a reasonable jury to find that Plaintiff's fall was not the result of an "accident." *See Saks*, 470 U.S. at 406 (holding that plaintiff's permanent hearing loss was not caused by an "accident" because it was the result of the "normal" and "usual" operation of the aircraft's pressurization system). There are genuine issues of material fact as to whether unexpected and unusual events created an "accident," and a reasonable jury could find in favor of either party, therefore summary judgment is not appropriate.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion for Summary Judgment.

The parties are hereby ordered to file a Joint Status Report within thirty (30) days of this Order indicating their readiness to proceed to trial and proposing trial dates.

IT IS SO ORDERED.

Dated: March 14, 2018

Troy L. Nunley
United States District Judge

14